Joseph Alvin SCHANTZ, Petitioner-Appellee,

v.

Frank A. EYMAN, Warden, Arizona State Prison, Respondent-Appellant.

No. 22764.

United States Court of Appeals Ninth Circuit.

Oct. 31, 1969.

Rehearing Denied Dec. 8, 1969.

Carl Waag (argued), Asst. Atty. Gen., Darrell F. Smith, Atty. Gen., Norval C. Jesperson, Asst. Atty. Gen., Phoenix, Ariz., for respondent-appellant.

Charles D. Roush (argued), John J. Flynn and James Moeller of Lewis, Roca, Beauchamp & Linton, Phoenix, Ariz., for petitioner-appellee.

Before MADDEN,* Judge of the United States Court of Claims, and MERRILL and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

Respondent appeals from an order of the district court in a habeas corpus proceeding which set aside petitioner's conviction of murder in the Superior Court of Maricopa County, Arizona, and ordered petitioner's release from custody unless the State afforded petitioner a new trial within ninety days. We affirm.

Respondent did not deny petitioner's factual allegations, and the district court, without objection, accepted them as true. The facts, thus established except as noted, are as follows.

Petitioner was charged with the murder of his wife. He pleaded not guilty, and served written notice of his intention to rely upon the defense of insanity as required by Arizona law. Ariz.R. Crim.P. 192 subsec. A, (1956), 17 A.R.S.

The county attorney asked petitioner's counsel to submit petitioner to a psychiatric examination by the State. Petitioner's counsel refused.[1] The county attorney then filed a motion asking the Superior Court to require petitioner to submit to such an examination. He withdrew the motion on the day set for hearing.[2] On that same day he sent Dr. Paul Bindelglas, a psychiatrist, to call upon petitioner at his home, without giving prior notice of Dr. Bindelglas' visit or its purpose either to petitioner or his counsel. Dr. Bindelglas was a stranger to petitioner. He introduced himself, explained that he was from the county attorney's office, and requested petitioner to submit to a psychiatric examination. Petitioner refused to submit.

At trial, petitioner called a qualified psychiatrist who testified that at the time of the offense petitioner did not know the nature and significance of his acts and did not know right from wrong. The county attorney offered no expert evidence in rebuttal. Instead, he called Dr. Bindelglas to the stand and, over the objection of petitioner's counsel, elicited an account of Dr. Bindelglas' confrontation with petitioner. In summation to the jury, he argued that these facts established that petitioner's defense of insanity was made in bad faith.[3]

---

* Honorable J. Warren Madden, Judge of the United States Court of Claims, sitting by designation.

1. This fact was not before the district court; it appears in a partial transcript of the State criminal trial appended to the respondent's brief in this court. It would therefore be improper to permit its use to undermine the district court's order. However, since it is submitted by respondent, and not contested by petitioner, we see no impropriety in using it to support the district court's judgment.

2. About seven months later, the Supreme Court of Arizona held that the courts of that state lacked statutory or inherent power to compel a defendant to submit to a pretrial mental examination. Steward v. Superior Court, 94 Ariz. 279, 383 P.2d 191 (1963).

3. In his summation, the county attorney argued:

"Now, ladies and gentlemen, there is a saying that a person who seeks justice in a court of law, should come in with clean hands, and I submit to you, ladies and gentlemen, that if this was a bona fide, good faith defense of insanity, why didn't he permit our psychiatrists to examine him? He said he was from the County Attorney's office. He said he was a psychiatrist. He asked to examine him.

If this is a good faith defense, and this man has nothing to hide, why didn't he let our psychiatrist examine him?

His refusal to let our man examine him shows bad faith. We would have liked to have had him examined. * * *

\*　　\*　　\*　　\*　　\*

Ladies and gentlemen, I submit to you that this is not a good faith defense of insanity."

The district court set aside petitioner's conviction on two grounds: (1) that the admission of Dr. Bindelglas' testimony and the subsequent comments on it by the county attorney violated petitioner's privilege against self-incrimination; and (2) that the post-indictment questioning of petitioner by a State psychiatrist on the county attorney's instructions, without notice to and in the absence of counsel, violated petitioner's right to the assistance of counsel at all critical stages of the criminal proceedings against him.

We affirm on the second ground.

■ Reasoning from the language of the Sixth Amendment[4] and principles established by Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) and succeeding cases, the Supreme Court held in United States v. Wade, 386 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), that "the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial" *Id.* at 226, 87 S.Ct. at 1932. The defendant's right to counsel at a given stage in a criminal prosecution is not linked "only to protection of Fifth Amendment rights." *Id.* Rather the essential determinants are "whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Id.* at 227, 87 S.Ct. at 1932.

The precise question, therefore, is whether potential substantial prejudice inhered in petitioner's post-indictment pretrial confrontation with the State's psychiatrist, and whether counsel's presence would have helped avoid that prejudice.

Dr. Bindelglas' testimony resulting from the confrontation substantially prejudiced petitioner at trial. It was the sole evidence offered by the State to rebut the insanity defense. The testimony of the defense psychiatrist regarding petitioner's mental condition was not unimpressive; the trial court, apparently on the basis of that testimony, directed an acquittal of first-degree murder. State v. Schantz, 98 Ariz. 200, 205, 403 P.2d 521, 527 (1965). It is at least possible, if not probable, that the jury rejected petitioner's insanity defense because it accepted the county attorney's argument that the petitioner's refusal to accede to Dr. Bindelglas' request established that his insanity defense was not submitted in good faith.

Respondent argues that the presence of counsel could not have avoided the prejudice because he could have done no more than advise petitioner to refuse to submit to the examination, the same course of action chosen in the absence of counsel.[5]

Counsel could have done much more.

It seems obvious that the confrontation was a deliberate stratagem by the county attorney to circumvent petitioner's counsel, and obtain either an uncontrolled and unsupervised examination of petitioner, or a refusal which could be used, as it was, with equal effect. Had counsel been present he could have negated this strategy by immediately informing Dr. Bindelglas that the county attorney's attempt, through the agency of Dr. Bindelglas, to communicate directly with petitioner rather than with petitioner's counsel was a gross violation of professional ethics.[6] It is doubtful that the county attorney would have asked Dr. Bindelglas to testify to that conversation assuming its admissibility.

Moreover, counsel could have told petitioner that his refusal might be admitted in evidence against him, and could have

---

4. The Sixth Amendment right to counsel is, of course, fully applicable to the states through the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

5. Petitioner's right under Arizona law to refuse the request is conceded. See note 2.

6. The authorities are fully presented in Judge Hamley's dissenting opinion in Coughlan v. United States, 391 F.2d 371, 376–377 (9th Cir. 1968), noted in 20 Hastings L.J. 958 (1969).

advised him whether, in light of this fact, it would have been better to agree to an examination. If this course had been adopted, counsel might have afforded petitioner further protection by insisting that the examination be conducted under appropriate safeguards, such as the use of neutral experts, the presence of a defense representative, and the preparation of a taped or stenographic record of the examination.[7]

We therefore conclude that under the principles spelled out in *Wade*, petitioner was entitled to and was denied the assistance of counsel at his post-indictment pretrial confrontation with Dr. Bindelglas, and his conviction cannot stand.[8]

██ The district court's order is also supported by the Supreme Court's decision in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). *Massiah* held "that the petitioner was denied the basic protection of [the Sixth Amendment] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." [9] *Id.* at 206, 84 S.Ct. at 1203. This is just such a case.

Affirmed.

MERRILL, Circuit Judge (concurring).

I concur.

I do not, however, feel that we need speculate on what an attorney's presence at the critical moment might have accomplished. Such an inquiry may be pertinent in cases where it is not otherwise readily apparent that the accused at the time was in need of legal advice as to his rights. It may be necessary in cases such as Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (and perhaps Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199 (1964)), where some role for the attorney other than his traditional one of legal adviser is found to exist. Such is not the case here, where the need for legal counsel was obvious.

Under Arizona law Schantz had a right to refuse to submit to examination. Whether or not he should have waived this state right was a decision he should not be expected to have made without the advice of his attorney. That decision could have had important results on trial. It was a lawyer's decision. Defendant was, then clearly entitled to advice of counsel in making the decision and to the presence of counsel at the time he was asked to make it.

Whatever the motive for defendant's refusal of examination then, unless his right under the Sixth Amendment was waived (which obviously it was not), the refusal of examination was protected by that Amendment. Following *Massiah*, it

7. *See* United States v. Driscoll, 399 F.2d 135, 138 (2d Cir. 1968), and cases there cited.

It is no answer to say that these same steps might have been taken by petitioner's counsel after the confrontation, and the prejudice thus avoided. There is nothing in the record to indicate that petitioner's counsel was aware of the confrontation prior to trial. Even if he were, the county attorney might well have preferred to go to trial with Dr. Bindelglas' testimony than risk the result of a properly protected psychiatric examination.

Nor can it be assumed from the earlier refusal of petitioner's counsel to agree to an examination that he would not have advised a contrary course in the changed circumstances resulting from his presence at the confrontation.

8. We do not reach the question whether an accused has the right to have counsel present at a pretrial mental examination. *Compare* United States ex rel. Wax v. Pate, 409 F.2d 498, 499 (7th Cir. 1969), *with* Thornton v. Corcoran, 407 F.2d 695, 698–702 (D.C.Cir. 1969). *See also* United States v. Albright, 388 F.2d 719, 726 (4th Cir. 1968).

9. *See also* Clifton v. United States, 341 F.2d 649, 651–653 (5th Cir. 1965); Lee v. United States, 322 F.2d 770, 778 (5th Cir. 1963); Beatty v. United States, 377 F.2d 181, 190 (5th Cir. 1967) (dictum). The ruling of this court in Coughlan v. United States, 391 F.2d 371 (9th Cir. 1968), is not to the contrary, for there "a clear and knowing waiver was shown." *Id.* at 372.

can be said that the basic protection of the Sixth Amendment would be denied by permitting trial testimony as to what occurred in absence of counsel to be used against the defendant. *Id.* at 206, 84 S. Ct. 1199.