67 F.3d 307
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Clara M. HESS, Petitioner-Appellant,
v.
Steven MACASKILL, Director Women's Correctional Center,
Respondent-Appellee.
 No. 94-35446.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 11, 1995.
Decided Sept. 20, 1995.
 
 1
 Before: BEEZER and HAWKINS, Circuit Judges, and TEVRIZIAN, District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Clara Mae Hess filed this petition for a writ of habeas corpus arguing that her Fifth and Sixth Amendment rights were violated. She argues that her Fifth Amendment rights were violated when the Montana State District Court ("state trial court") ordered her to submit to psychological and psychiatric evaluations. She also argues that she was denied her Sixth Amendment right to counsel because her counsel was not permitted in the room during the court-ordered evaluations.
 
 
 4
 The district court had jurisdiction under 28 U.S.C. Sec. 2254 and we have jurisdiction under 28 U.S.C. Sec. 1291. The district court denied the petition and we affirm.
 
 
 5
 * Hess was charged with deliberate homicide in the shooting death of her husband, William Hess. She pleaded not guilty and gave notice of her intent to rely on the defense of justifiable use of force based on the battered woman's syndrome. The notice stated that Dr. Lenore Walker, a known expert on battered woman's syndrome, was to examine Hess and testify at trial. The State then moved, and the state trial court ordered, a psychiatric and psychological evaluation of Hess by two State experts.
 
 
 6
 The state trial court's order limited the examination by providing "that defendant need not answer any questions or produce any documents that she reasonably believes may incriminate her, and her attorney may be present in the waiting room of such examiner and may counsel defendant at recesses and meals." After Hess refused to undergo the court-ordered evaluations the state trial court ordered Lenore Walker's testimony excluded unless Hess submitted to the examinations. In July 1990, Hess submitted to the examinations.
 
 
 7
 Hess was convicted of mitigated deliberate homicide and was sentenced to thirty years with a five year enhancement for use of a weapon. The Montana Supreme Court affirmed the conviction holding that Hess "put her mental state at issue when she relied upon the affirmative defense of justifiable use of force and offered psychological evidence ... to support that defense." As a result, her Fifth Amendment protection against self-incrimination was not violated. The Montana Supreme Court also held that Hess was not entitled to Miranda warnings nor was she entitled to have her attorney present in the room during the ordered evaluations.
 
 
 8
 Hess subsequently filed this petition for habeas corpus making the same claims of error. The parties consented to submit the case to a magistrate judge for decision of all pending motions and entry of judgment. The magistrate judge denied the petition granting the State's cross-motion for summary judgment. Hess timely appealed.
 
 II
 
 9
 We review de novo the denial of a petition for habeas corpus. Sanders v. Ratelle, 21 F.3d 1446, 1451 (9th Cir.1994). The state court's findings of fact are reviewed for clear error and are entitled to a presumption of correctness under 28 U.S.C. Sec. 2254(d). Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991).
 
 III
 
 10
 Hess first contends that the State could not force her to undergo the psychological and psychiatric examinations for they would cause her to incriminate herself. She argues that she did not put her mental state at issue because she raised a defense of self-defense and not a defense of insanity or diminished capacity.
 
 
 11
 In making this argument, Hess relies on Estelle v. Smith, 451 U.S. 454 (1981). In Estelle, a defendant charged with capital murder was sua sponte ordered to undergo a psychiatric examination to determine his competency to stand trial. Id. at 457. After being found competent, the defendant was tried and convicted. At the ensuing sentencing phase, the State called the examining doctor, Dr. Grigson, to testify as to the defendant's future dangerousness, an element which must be proved beyond a reasonable doubt before the death penalty may be imposed. Id. at 460.
 
 
 12
 In reversing the sentence of death, the Supreme Court held "[a] criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him...." Id. at 468.
 
 
 13
 The Court later held that this quoted language from Estelle "leads to another proposition: if a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." Buchanan v. Kentucky, 483 U.S. 402, 422 (1987). In Buchanan, the prosecution and the defense jointly moved for a mental examination for the purpose of determining whether the defendant should be involuntarily committed. Id. at 423. When the defendant later raised the "mental status" defense of "extreme emotional disturbance," the prosecution sought to introduce the reports of the psychiatrist in the rebuttal phase. Id. The Supreme Court held that the introduction of the report for the limited purpose of rebuttal was not a violation of the Fifth Amendment.
 
 
 14
 Subsequent Ninth Circuit case law has held that a defendant who puts his or her mental state at issue may be compelled to submit to psychiatric examinations. See, e.g., United States v. Phelps, 955 F.2d 1258, 1263 (9th Cir.1992) (insanity acquittee places his insanity at issue by seeking release on the ground that he has recovered), cert. denied, 504 U.S. 989 (1992). Thus, when a defendant seeks to introduce evidence, through expert testimony, of insanity or diminished capacity, the prosecution is permitted to conduct an examination of the defendant by their own expert.
 
 
 15
 While a battered woman's syndrome defense it not technically a defense of insanity or diminished capacity, the essence of the defense is that the defendant was so affected by the abuse suffered that she believed she was in imminent danger of serious bodily injury. In order to present this defense, defendants rely on expert testimony, based on psychological and psychiatric testing and interviews, that the defendant suffers from symptoms consistent with battered woman's syndrome. The state should be entitled to the same quality of evidence as the defense. The only way the state may rebut the defense is to conduct its own examination and present its own expert testimony.
 
 
 16
 The vast majority of state appellate courts to address this issue have held that a trial court has the inherent power to compel a defendant to submit to a mental evaluation when she asserts an affirmative defense of self-defense based on the battered woman's syndrome. See, e.g., State v. Myers, 570 A.2d 1260, 1266 (N.J.Super.Ct.App.Div.1990), certification denied 604 A.2d 598 (N.J.1990); State v. Hickson, 630 So.2d 172, 176 (Fla.1993); State v. Briand, 547 A.2d 235, 237 (N.H.1988).
 
 
 17
 The examination ordered in this case was limited. The state trial court ordered Hess to submit to an examination only if she intended to use the expert testimony of Dr. Lenore Walker. The State was permitted to have Hess examined by experts of its choosing but the State was only permitted to use this testimony during the rebuttal phase of the trial. Finally, any opinions and evidence gained from the evaluations could be used only to rebut Hess' battered woman's syndrome defense.
 
 
 18
 We hold that ordering Hess to submit to psychological and psychiatric examinations after she expressed her intent to rely on expert testimony to establish the defense of battered woman's syndrome was not error.[1]
 
 IV
 
 19
 Hess also argues that the State violated the Fifth Amendment because they did not inform her of her Miranda rights before the examinations. However, once Hess sought to introduce psychological evidence in support of a mental state defense, Miranda warnings before the psychological examination were no longer required. Hendricks v. Vasquez, 974 F.2d 1099, 1108 (9th Cir.1992) (citing Powell v. Texas, 492 U.S. 680, 684 (1989)).
 
 V
 
 20
 Hess next argues that her Sixth Amendment right to counsel was violated because her counsel was not permitted in the room during the ordered examinations. For support, Hess relies on Estelle v. Smith. In Estelle, Smith's counsel had neither notice of the evaluations nor an opportunity to consult with Smith about the nature of the evaluations. 451 U.S. at 471. The Court held that Smith was denied his Sixth Amendment right to counsel. Id. See also United States v. Garcia, 739 F.2d 440, 442 (9th Cir.1984).
 
 
 21
 Unlike Estelle, Hess' counsel had notice of the ordered examinations and ample opportunity to consult with her. While not present in the room, Hess' counsel was present in the office of Dr. Walters during both of his meetings with Hess. Hess was able to consult with counsel during all breaks. Hess' counsel was again present in the office during Dr. Stratford's first examination and was available by telephone for the second.
 
 
 22
 Thus, Hess' counsel had notice of the examinations, was able to consult with Hess concerning the nature and scope of the examinations, was present in the waiting room during the examinations and was able to consult with Hess during breaks. This was constitutionally sufficient. See Buchanan v. Kentucky, 483 U.S. at 424. Hess does not have the further right to have her counsel physically present in the room during the course of the examination. See United States v. Bondurant, 689 F.2d 1246, 1249 (5th Cir.1982) (defendant has no right to have counsel present in examining room). Hess was not denied her Sixth Amendment right to counsel during these psychiatric and psychological examinations.
 
 VI
 
 23
 We hold that the state trial court did not violate Hess' rights under the Fifth Amendment by compelling her to submit to psychological and psychiatric examinations after she expressed her intent to assert a battered woman's syndrome defense. We also hold that Hess' Sixth Amendment right to counsel was not violated when her counsel was not permitted in the room during the evaluations. We affirm the denial of the writ of habeas corpus. AFFIRMED.
 
 
 
 *
 The Honorable Dickran M. Tevrizian, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Hess' arguments concerning the applicability of Montana statutes to her case are unavailing. Federal habeas corpus relief may be granted only for violations of the federal constitution. See Estelle v. McGuire, 502 U.S. 62, 68 (1991). Any argument that the examinations were ordered in violation of Montana statutes is state error and habeas relief may not be had