478 P.2d 522

**STATE of Arizona, Appellee,**

**v.**

**Albert M. DANIELS, Appellant.**

**No. 1997.**

Supreme Court of Arizona,
In Division.

Dec. 28, 1970.

498

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

McFARLAND, Justice:

Appellant, Albert M. Daniels, hereinafter referred to as defendant, was granted this delayed appeal from his conviction by a jury on December 20, 1965, of burglary, first degree. He was sentenced to serve not less than ten nor more than eleven years in the Arizona State Penitentiary. From his conviction and sentence he appeals.

On February 4, 1965, at approximately 11:30 p. m., defendant was observed in a clothing store packing items in a zipper bag. The witness noted the glass in the door was partly broken out, and when he shouted the defendant exited from the store through that opening. Defendant was apprehended in a nearby alley by police, and was never out of the sight of the witness. When stopped by the police the defendant threw down the bag and without instructions to do so assumed a leaning position against the wall with arms overhead in a typical police search manner. Defendant was at that time wearing a jacket identified as part of the stolen merchandise. Following his arrest defendant made a written admission in which he denied only the breaking of the glass in the door. After three months confinement in the county jail in lieu of bond his attorney noted defendant appeared unable to assist with his defense, and moved the court for a mental examination under Rule 250, Rules of Crim. Proc., 17 A.R.S. On May 8, 1965, defendant was committed to the Arizona State Hospital where he remained until his discharge on November 3, 1965.

Seven days before his trial, on December 13, 1965, defendant filed notice of his intention to plead not guilty by reason of insanity. At his trial defendant's sole witness was the Phoenix psychiatrist who had examined him on May 8th, and his principal testimony was as follows:

"A. I must elaborate a little on that by adding, based on the fact that I knew he had been a State Hospital patient before, I think in 1961—I inquired to that effect, and I was told that he was, and my examination, I believe that he was not able to be held responsible for knowing what was right or wrong at the time in February."

Defendant did not testify at the trial. The investigating officer testified that defendant was "quiet and very cooperative" and not abnormal in any way, and that "his level of intelligence seemed above what we normally come in contact with from people in the area in which he was arrested."

The officer and defendant testified in chambers concerning defendant's statement and certain letters written by defendant during the first weeks of his confinement in the county jail. The trial court found that the statement was voluntary, and that defendant had the mental capacity necessary to waive his constitutional right to refrain from making such statement.

Defendant's principal contention on appeal is that having offered expert testimony that he was not sane at the time of the act in question he must be absolved of criminal responsibility, and the court erred in not directing a verdict for defendant since the State failed to put on expert testimony to show that defendant knew the nature and quality of his act and that he knew his act was wrong. In State v. Cano, 103 Ariz. 37, 436 P.2d 586, we said:

" * * * Expert-opinion testimony is merely evidence to be considered by the jury, together with all the facts and circumstances of the case. * * *

\* \* \* \* \* \*

"The law has not yet been able to develop a perfect standard by which legal responsibility for crime is to be determined. See State v. Schantz, supra. It is for this reason that the function of the jury becomes of even greater importance in cases where insanity is raised as a defense. * * * "

We held, in State v. Crose, 88 Ariz. 389, 357 P.2d 136:

"Whenever the mental condition of a defendant is in issue, two basic questions are presented. One is whether he is afflicted with a mental illness or disease which acted to produce the conduct with which he is charged. This is entirely a medical, psychiatric question, in which the law has only incidental interest. It is answerable only by medical experts in the application of medical standards. The other, a fundamentally different and wholly legal question, is whether the defendant is to be charged with criminal responsibility for his conduct. Medical considerations play a part—but only a part—in its answer."

The weight to be given evidence including expert opinions is a question for the jury.

Defendant further contends that it was error for the court to instruct the jury that there is a presumption defendant was sane when he committed the act. He maintains that the presumption of sanity vanished when defendant made it an issue and cites State v. Schantz, 98 Ariz. 200, 403 P.2d 521; State v. Martin, 102 Ariz. 142, 426 P.2d 639.

In State v. Martin, supra, we said:

"The defendant contends that it was error on the part of the trial court to refuse to instruct the jury that the burden was on the prosecution to prove defendant's sanity beyond a reasonable doubt. In State v. Schantz, 98 Ariz. 200, 403 P.2d 521 we said that once 'insanity is an issue, the burden of the state is to establish beyond a reasonable doubt the converse.' We believe the position taken by us in State v. Schantz, which is supported by a number of other jurisdictions, People v. Tobin, 176 N.Y. 278, 68 N.E. 359; Howard v. United States, 232 F.2d 274 (5th Cir.); State v. Iverson, 77 Idaho 103, 289 P.2d 603; People v. Munroe, 15 Ill.2d 91, 154 N.E.2d 225; Jenkins v. State, 238 Md. 451, 209 A.2d 616, is sound. In applying the rule,

insanity will be deemed to be 'an issue' once the defendant introduces sufficient evidence to raise a doubt as to his sanity under the rule of McNaghten's case. When such evidence is introduced, it then becomes incumbent upon the state, commensurate with our decision in State v. Brock, 101 Ariz. 168, 416 P.2d 601, to prove beyond a reasonable doubt that:

"1. The defendant knew the nature and quality of his act, *and*

"2. The defendant knew that what he was doing was wrong."

In State v. Martin, supra, we cited Howard v. United States, 232 F.2d 274 (5th Cir.); Jenkins v. State, 238 Md. 451, 209 A.2d 616; and State v. Iverson, 77 Idaho 103, 289 P.2d 603, among others, as cases supporting our position which cases hold that the presumption of sanity continues through the trial and is rebutted by the defendant creating a reasonable doubt as to his sanity in the minds of the jury. In Howard v. United States, supra, the court said:

"* * * The rule is that, 'If the whole evidence, including that supplied by the presumption of sanity, does not exclude beyond reasonable doubt the hypothesis of insanity, of which some proof is adduced, the accused is entitled to an acquittal of the specific offense charged', Davis v. United States, supra, 160 U.S. [469] at page 488, 16 S.Ct. [353] at page 358 [40 L.Ed. 499]; see also, Lee v. United States, supra, [5 Cir.,] 91 F.2d [326] at pages 330–331; Weihofen, 'Mental Disorder as a Criminal Defense', pp. 226, 241."

In Jenkins v. State, supra, the court held:

"* * * They instructed the jury, both on the aspect of the appellant's sanity at the time of trial and his sanity at the time of the crime, what Bradford said was the law, that every person is presumed to be sane and in order to rebut that presumption it is necessary that evidence be introduced sufficient to cause a reasonable mind to question whether he was sane and, if evidence

to that extent has been introduced, the presumption is overcome, and the State must prove the defendant sane beyond a reasonable doubt."

In State v. Iverson, supra, the court said:

"Appellant cites as error the refusal to give his requested instruction No. 5. Instruction No. 13 above quoted substantially covers it except that defendant's requested instruction states the presumption of sanity 'may be overcome by *evidence tending to prove* insanity existed at the time of the commission of the alleged offense. When such evidence is introduced, then the presumption of sanity ceases.' The court's instruction is to the effect the presumption of sanity exists 'until evidence is presented sufficient to raise in the minds of the jury a *reasonable doubt* as to the sanity of the accused.' (Emphasis added.)

"The court's instruction appears to follow more closely the rule in State v. Tharp, 48 Idaho 636, 284 P. 201, and State v. Shuff, 9 Idaho 115, 72 P. 664, 670:

"'The defendant on his own motion brings the question of insanity into the case, and it devolves upon him to create a reasonable doubt in the minds of the jurors * * *.'

"The jury knew from instructions Nos. 13 and 14 and all the other instructions that if a reasonable doubt was cast on the presumption of sanity, that presumption no longer prevailed, and the burden of proving sanity beyond a reasonable doubt then rested on the state."

People v. Tobin, 176 N.Y. 278, 68 N.E. 359; and People v. Munroe, 15 Ill.2d 91, 154 N.E.2d 225, are cited in State v. Martin, supra, and also cited, among others, in Underhill's Criminal Evidence, 5th Edition, § 453, which states that the majority of cases

"* * * hold that the presumption [of sanity] continues and should be considered by the jury along with the other evidence on the question of sanity. * * *" p. 1136

Recently this Court, in State v. Blazak, 105 Ariz. 216, 462 P.2d 84, pointed out that the legislature did not intend to change the burden of proof as it existed at the time § 13–1621.01 A.R.S., as amended, was enacted. Such statute provides "The multiple trial concept shall not affect the traditional burden of proof or the applicability of (A.R.S.) 13–131."

Section 13–131 provides:

"In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence. The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. All persons are of sound mind who are neither idiots nor lunatics nor affected with insanity."

This section comes to us from California Penal Code, §§ 20 and 21, taken from the Statutes of 1850, C & P § 3, which read:

"All persons shall be considered of sound mind who are neither an idiot, nor lunatic nor affected with insanity, and who have arrived at the age of fourteen years or before that age if such person knew the distinction between good and evil."

The latter portion is now found in § 13–135, A.R.S. Such laws create presumptions of intent, sanity, and an affirmative defense, and in 1864, the California Supreme Court held, in People v. Coffman, 24 Cal. 230:

"In cases where the homicide is clearly established against the defendant, the only object in proving his insanity is to negative the malicious intent of the defendant, presumed by law, from the act of killing; and if it is proved that the defendant was insane at the time of the commission of the act, that presumption is rebutted.

"Insanity, then, being a fact to be proved by the defendant, it must be established by evidence in the case with the same clearness and certainty as any other fact alleged by the defendant in his defense; that it to say, the proof must be such in amount, that if the single issue of the

sanity or insanity of the defendant should be submitted to the jury in a civil case, they would find that he was insane. (People v. McCann, 16 N.Y. 58.)"

The court in its instruction informs the jury of the law as applicable to facts and then the affirmative defenses which have been placed in evidence, such as § 13–132, A.R.S., Effect of Intoxication; § 13–134, supra, Certain Exceptions From Punishment; § 13–135, Incapacity, as well as other affirmative defenses, most of which are submitted to the jury with evidence presented by the defendant, and are sustained in the event he has created a reasonable doubt. Because of the presumption of innocence in Arizona declared by statute, the State must carry the burden of proving all elements of a crime beyond a reasonable doubt. Mental capacity to commit a crime is a material part of total guilt for there can be no crime without mens _ea. If a defendant introduces sufficient evidence to raise a doubt as to his sanity under the Rule of M'Naghten the burden of the State is to establish beyond a reasonable doubt the converse. State v. Martin, supra; State v. Schantz, supra. In its efforts to do so, the State is aided by the presumption of sanity since statutory presumptions do not vanish as do presumptions of law or fact. Udall on Evidence, § 193.

We believe it proper for the court to charge on the presumption of sanity when an issue, since if as a matter of law the court determined from the evidence that the defendant lacked the mental capacity he would then be required to direct a verdict of acquittal. Placing the burden upon the defendant is fair and necessary, since the defendant can resist efforts of the State to obtain a complete or timely examination, or secure copies of defendant's doctor's reports. Steward v. Superior Court of Maricopa County, 94 Ariz. 279, 383 P.2d 191; Moore v. State, 105 Ariz. 510, 467 P.2d 904.

In the instant case notice of intention to plead not guilty by reason of insanity was filed seven days before trial and ten months after the commission of the crime. It is apparent that the State would have difficulty obtaining reliable expert evidence to meet the issue of sanity if the law was as claimed by defendant. Whether a doubt was raised in the minds of the jury to rebut the presumption of sanity cannot be determined by the court. The weight to be given the evidence is a question for the jury. Therefore, the jury was properly instructed to the effect that a reasonable doubt of defendant's sanity at the time of the crime should be resolved in favor of defendant, and, if a reasonable doubt is found, it should return a verdict of not guilty. It is not inconsistent for a court to instruct that there is a presumption of sanity and a presumption of innocence. As this Court held, in State v. Childress, 78 Ariz. 1, 274 P.2d 333:

"Finally, we do not perceive any conflict between the instruction that upon proof of one fact another fact is presumed, and the instruction that the law does not presume the guilt of one accused of crime. The presumption of innocence always gives way in the face of facts to the contrary proved beyond a reasonable doubt, else there could never be a conviction for crime.

"The Supreme Court of Virginia in the case of Burnette v. Commonwealth, supra, 194 Va. 785, 75 S.E.2d 482, 486, was dealing with a conviction for burglary under a statute which created a presumption of criminal intent from possession of burglarious tools, which is an analogous situation to our problem in the instant case. It stated:

"'* * * All the statute does is to create a presumption of a criminal intent from proof of possession of burglarious tools or implements. Such a presumption is not conclusive; it cuts off no defense. It interposes no obstacle to a contest of all of the issues of fact, and relieves neither the court nor the jury of the duty to determine

all of the questions of fact from the weight of the whole evidence. "It is merely a rule of evidence and not the determination of a fact." Barton v. Camden, 147 Va. 263, 272, 137 S.E. 465, 468. When possession is proven, the burden of going forward with the evidence shifts to defendant but this does not shift the burden of ultimate proof, or deprive defendant of his right to have the jury instructed on the presumption of innocence.' "

■ Defendant next contends that the State failed to establish that defendant was guilty of burglary, first degree, in that there was no proof that the entry was made in the night time. Defendant was discovered at 11:30 p. m. in the act of collecting merchandise. From defendant's statement, the testimony of the store owner as to the usual closing time, and the fact that the crime took place on February 4th, the jury could properly conclude that the burglary occurred in the night time without evidence of the time of "sunset" on the date in question.

■ In his final contention defendant contends that the court erred by commenting on the evidence in its instruction on the voluntariness of the statement or confession. The court instructed the jury it could not consider the confession or statement unless it was found to be voluntarily made. The defendant complains about the statement in which the court, at the beginning of the instruction, stated that;

"* * * although the court has adequate evidence tending to show that the defendant made an admission or confession or both, * * *"

The court made no comment on the voluntariness of the statement and carefully instructed the jury it should disregard any asserted admissions or confessions unless "you yourselves," after weighing the evidence charging credibility of witnesses "and your own reasonable deductions" conclude that the alleged admissions or confessions were not only made but were made voluntarily.

The only question was the voluntariness of the admissions or confessions. There was no comment by the court in regard to their voluntariness. Furthermore, no objection was made to the instruction, and the court, at the request of the defendant, gave an additional instruction that the jury must determine the truthfulness of the statements. Taken as a whole, the instructions were complete and adequate. We held, in State v. Norgard, 103 Ariz. 381, 442 P.2d 544:

"* * * In addition, we might point out that the errors in the instruction were not complained of at the trial, but are being raised for the first time on appeal. We have held many times that this Court will only consider such questions as were raised at trial with respect to errors or omissions in the giving of instructions unless such claimed error is so fundamental that it is manifest the defendant did not receive a fair trial. State v. Johnson, 99 Ariz. 52, 406 P.2d 403; State v. George, supra [95 Ariz. 366, 390 P.2d 899]; State v. Evans, supra [88 Ariz. 364, 356 P.2d 1106]."

We find the contention of the defendant that there was prejudicial error unfounded.

Judgment affirmed.

LOCKWOOD, C. J., and STRUCKMEYER, V. C. J., concur.